IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                             No. CR 04-2040 JB

LOUIS DAPRANO,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

       **THIS MATTER** comes before the Court on the Letter from Louis A. Daprano to the Court (dated October 28, 2010), filed October 28, 2010 (Doc. 232). The Court held a hearing on November 29, 2010. The primary issues are: (i) whether the Court should order that the Plaintiff United States of America return to Defendant Louis Daprano aka Louis D. Gravina property seized, specifically: (a) a Hewlett Packard laptop; (b) a Epson printer; (c) a book entitled <u>Rapid Access Guide to Physical Examination</u> by Donald W. Novey; (d) a Model Agreement from Image Photography, dated June 8, 2004; (e) two packages of photographs from Walgreens one-hour photo labeled Department of Public Safety evidence; (f) a file folder labeled clinical applications; (g) a blue folder containing miscellaneous documents in Gravina's name; and (h) a Landscapes weekly planner in Gravina's name; and (ii) whether the Court should order the Rio Rancho Police Department to return a laptop bag and eighteen files in its possession to Daprano. The Court will grant in part and deny in part Daprano's requests for return of property seized. The Court will grant Daprano's requests for return of the Hewlett Packard laptop, the Epson printer, the <u>Rapid Access Guide to Physical Examination</u> by Donald W. Novey, the Model Agreement from Image Photography, and the Landscapes weekly planner in Gravina's name. Because Daprano has

withdrawn his requests for the return of the two packages of photographs, the folder labeled clinical applications, and the folder containing miscellaneous documents in Gravina's name, the Court will not order these items returned to him. The Court will deny without prejudice Daprano's request that it order the return of a laptop bag and eighteen files in the possession of the Rio Rancho Police Department. The Court orders the United States to make a reasonable effort to dispose of the books in its possession for which Daprano is not making a claim. The Court gives the United States until January 15, 2011 to submit an order regarding the proposed disposition of the items remaining in its possession.

## PROCEDURAL BACKGROUND

On August 16, 2007, Daprano entered into a plea agreement, in which he pled guilty to a violation of 18 U.S.C. § 1344 -- Bank Fraud. See Plea Agreement, filed August 16, 2007 (Doc. 164). On April 17, 2008, Daprano moved for "the return of all property seized" from him pursuant to rule 41(g) of the Federal Rules of Criminal Procedure. Defendant's Motion for Return of Property at 1, filed April 17, 2008 (Doc. 187). On July 3, 2008, the Court entered a Memorandum Opinion and Order, granting in part and denying in part Daprano's motion. The Court allowed the Federal Bureau of Investigation to transfer the items seized as evidence to the State of New Mexico, because the items were possibly admissible evidence in the pending state-court case, and ordered all items not used in the state trial as evidence returned to the FBI immediately after the state trial for return to Daprano. See Memorandum Opinion and Order at 1-2, filed July 3, 2008 (Doc. 207)("July 3, 2008 MOO"). The Court denied Daprano's motion as to any items used in the trial. See July 3, 2008 MOO at 2.

On June 25, 2009, Daprano wrote to the Court, requesting that the Court "immediately direct the state [of New Mexico] to return . . . [his] property," as the State of New Mexico had not yet

returned any of his property, and requesting that the Court order the State of New York to return Daprano's property that the North Greenbush Police Department seized in North Greenbush, New York, on August 23, 2004. Letter from Louis A. Daprano to the Court at 2-3 (dated June 25, 2009), filed June 25, 2009 (Doc. 209). The Court issued a Memorandum Opinion and Order on November 5, 2009, granting in part and denying in part Daprano's requests in his letter. The Court denied Daprano's request that it order the State of New York to return his property seized in New York, because it did not have jurisdiction to order the State of New York to return the property. See Memorandum Opinion and Order at 1-2, filed November 5, 2009 (Doc. 221)("Nov. 5, 2009 MOO"). The Court required compliance with its previous order that the United States retrieve Daprano's property from the State of New Mexico at the conclusion of the state-court trial, return the property to the possession of the FBI, and for the FBI to transfer the property to Daprano. See Nov. 5, 2009 MOO at 2. The Court recognized that the property had not yet been returned to Daprano, and that neither the State of New Mexico nor Daprano used any of the items in the State's possession in the state-court trial. See Nov. 5, 2009 MOO at 2. The Court ordered the State of New Mexico to return Daprano's property to the FBI no later than ten days from November 2, 2009, and ordered the FBI to transfer Daprano's property to his designated agent within ten days from the time that the State of New Mexico transferred Daprano's property to the FBI. See Nov. 5, 2009 MOO at 2.

On November 20, 2009, Assistant United States Attorney Charles L. Barth filed a letter and inventory with the Court, representing that six boxes were sent to Daprano's agent in New York. See Letter from Charles L. Barth to the Court at 1 (dated November 20, 2009), filed November 20, 2009 (Doc. 222). The inventory listed items in either red or black ink; the items in black ink were sent to Daprano's agent and the items in red ink were retained in the United States Attorney's Office pending determination of ownership. See November 20, 2009 Letter at 1.

Daprano's October 28, 2009 letter to the Court requested the return of several items retained in the United States Attorney's Office and requested the Court to order the Rio Rancho police to turn over any illegally confiscated property. See October 28, 2009 Letter at 2-3. Specifically, Daprano sought return of: (i) a Hewlett Packard laptop; (ii) a Epson printer; (iii) a book entitled Rapid Access Guide to Physical Examination by Donald W. Novey; (iv) a Model Agreement from Image Photography, dated June 8, 2004; (v) two packages of photographs from Walgreens one-hour photo labeled DPS evidence; (vi) a file folder labeled clinical applications; (vii) a blue folder containing miscellaneous documents in Gravina's name; and (viii) a Landscapes weekly planner in Gravina's name. Daprano also sought the return of a laptop bag and eighteen files in the possession of the Rio Rancho Police Department.

The Court held a hearing on November 29, 2010. Mr. Barth brought all items remaining in the United States' possession to the hearing.

## RELEVANT LAW REGARDING RULE 41(g)

Rule 41(g) of the Federal Rules of Criminal Procedure states:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). "A district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows 'irreparable harm and an inadequate remedy at law.'" United States v. Soto-Diarte, 370 F. App'x 886, 887 (10th Cir. 2010)(quoting United States v. Coperman, 458 F.3d 1070, 1071 (10th Cir. 2006)). "Once criminal proceedings have terminated, however, 'the person from whom the property was seized is presumed to have a right to its return and the government

-4-

must demonstrate that it has a legitimate reason to retain the property.'" United States v. Soto-Diarte, 370 F. App'x at 887 (quoting United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1213 n.14 (10th Cir. 2001)).

**ANALYSIS**

The Court will grant in part and deny in part Daprano's requests in his letter to the Court, dated October 28, 2010, for return of property seized. The Court will grant Daprano's requests for return of the Hewlett Packard laptop, the Epson printer, the Rapid Access Guide to Physical Examination by Donald W. Novey, the Model Agreement from Image Photography, dated June 8, 2004, and the Landscapes weekly planner in Gravina's name. Because Daprano has withdrawn his requests for return of the two packages of photographs, the folder labeled clinical applications, and the folder containing miscellaneous documents in Gravina's name, the Court will not order these items returned to him. The Court will deny without prejudice Daprano's request that it order the return of a laptop bag and eighteen files in the possession of the Rio Rancho Police Department. The Court orders the United States to make a reasonable effort to dispose of the books in its possession for which Daprano is not making a demand. The Court gives the United States until January 15, 2011 to submit an order regarding the proposed disposition of the items remaining in its possession.

**I.     THE COURT WILL ORDER THE UNITED STATES TO RETURN TO DAPRANO THE HEWLETT PACKARD LAPTOP AND THE EPSON PRINTER.**

At the hearing, Mr. Barth objected to Daprano's request that the Court order the return of the laptop. Mr. Barth argued that, because Daprano purchased the laptop through a fraudulent loan, it should not be returned to him. See Transcript of Hearing at 8:17-9:4 (taken November 29,

2010)(Barth, Court)("Tr.").[1] Mr. Barth stated that Daprano obtained the loan from the New Mexico Educators Federal Credit Union ("NMEFCU") by giving them a letter purportedly from Archbishop Michael J. Sheehan, which stated that Daprano was a Catholic priest who had taken a vow of poverty and that, if NMEFCU would loan Daprano money to obtain a laptop computer, the Archdiocese of Santa Fe would stand behind the loan. See Tr. at 9:7-19 (Barth). Mr. Barth stated that Daprano obtained a loan in the amount of $1,655.58. See Tr. at 10:20-21 (Barth).

At the hearing, Daprano argued that it was irrelevant whether the laptop was obtained illegally, because the Court ordered him to pay restitution to the NMEFCU. See id. at 12:10-16 (Daprano). Mr. Barth responded that, although the Court ordered Daprano to pay restitution, Daprano has not yet paid any restitution, and the chance that he will be able to pay restitution after serving his sixty-five year sentence is slim. See id. at 26:23-27:3 (Barth). Mr. Barth stated that he wants to give the laptop to the NMEFCU. See id. at 27:3-5 (Barth). Daprano objected to the possibility that the United States would give the laptop to the NMEFCU, because the computer contains his personal information. See Tr. at 27:8-16 (Daprano). Daprano also asserted that, at this point, the computer is close to worthless, and that if the United States is going to give anything to the NMEFCU, the Court should modify his restitution order. See Tr. at 27:17-22 (Daprano).

At the beginning of the hearing, Mr. Barth stated that he did not have any objection to giving the printer to Daprano. See id. at 26:7-8 (Barth). As it became apparent that Daprano might have obtained the printer with the fraudulent loan he obtained from the NMEFCU, however, Mr. Barth stated that, if the printer was also purchased with the fraudulent loan, he would object to its return to Daprano. See id. at 28:2-6 (Barth).

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

At Daprano's sentencing, the Court ordered Daprano to pay restitution in the amount of $9,717.44. Of that amount, $1,940.61 is to be paid to the NMEFCU. See Judgement, filed July 1, 2008 (Doc. 197). Daprano is to begin paying restitution upon his release. Because the Court ordered Daprano to pay restitution to the NMEFCU, it believes that the laptop and printer -- assuming that Daprano purchased the printer with the fraudulent loan -- are Daprano's property by forced sale.[2] Cf. Black's Law Dictionary 1455 (9th ed. 2009)(defining "forced sale" as "[a] hurried sale by a debtor because of financial hardship or a creditor's action"). If the Court ordered the return of the laptop and printer to the NMEFCU, it would have to revise its restitution to be fair to both the NMEFCU and Daprano, and it is far from clear that NMEFCU would want an old laptop rather than the restitution. At this point, the laptop and printer are worth very little, because of rapid advances in technology. NMEFCU did not appear at the hearing or have notice of it; it had no reason to think the restitution order might be modified. It is also unclear whether the Court can alter the judgment entered on July 1, 2008. See 18 U.S.C. § 3664(o)(stating that a "sentence that imposes an order of restitution is a final judgment notwithstanding the fact that" the sentence can be corrected: (i) under rule 35 of the Federal Rules of Criminal Procedure, which allows for correction for clear error, or for reducing a sentence for the defendant's substantial assistance in investigating or prosecuting another person; (ii) appealed and modified under 18 U.S.C. § 3742, which allows for appeal of a sentence in certain circumstances; (iii) amended under 18 U.S.C. § 3664(d)(5), which allows for modification if the victim subsequently discovers further losses; and (iv) adjustment under 18 U.S.C. § 3664(k), 18 U.S.C. § 3572, or 18 U.S.C. § 3613A, which allow for modification based on the

---

[2] If Daprano did not purchase the printer with the fraudulent loan, the United States has no objection to returning the property to him. Regardless, however, of how Daprano obtained the printer, the Court orders the United States to return it to him.

defendant's ability to pay. For these reasons, and reasons stated at the hearing on the record, the Court orders the United States to return the laptop and printer to Daprano's agent in New York at its expense.

## II. THE COURT WILL ORDER THE UNITED STATES TO RETURN THE RAPID ACCESS GUIDE TO PHYSICAL EXAMINATION, THE MODEL AGREEMENT FOR IMAGE PHOTOGRAPHY, AND THE LANDSCAPES WEEKLY PLANNER IN GRAVINA'S NAME TO DAPRANO.

At the hearing, Mr. Barth said that he did not have any objection to returning the Rapid Access Guide to Physical Examination to Daprano. See Tr. at 15:1-3 (Court, Barth). Based on Mr. Barth's representation, the Court will order the Rapid Access Guide to Physical Examination, by Donald W. Notice, returned to Daprano. The Court orders Stephen P. McCue, advisory counsel to Daprano, to take possession of the book, and to attempt to send the book to Daprano, who is currently located in the Lea County Correctional Facility in Hobbs, New Mexico. If the Lea County Correctional Facility will not allow Daprano to receive the book because of the graphic representations contained therein, the Court orders Mr. McCue to send the book to Daprano's agent in New York.

At the hearing, Mr. Barth stated that he did not object to returning either the Landscapes weekly planner or the Model Agreement for Image Photography to Daprano. See Tr. at 18:2-3, 23:3-7 (Court, Barth). Based on Mr. Barth's representations, the Court will order the United States to return the Landscapes weekly planner in Gravina's name and the Model Agreement for Image Photography to Daprano. The Court orders Mr. McCue to take possession of these items and to send the items to Daprano.

### III. THE COURT WILL NOT ORDER THE UNITED STATES TO RETURN THE TWO PACKAGES OF PHOTOGRAPHS LABELED DPS EVIDENCE, THE FILE FOLDER LABELED CLINICAL APPLICATIONS, OR THE FOLDER OF MISCELLANEOUS DOCUMENTS IN GRAVINA'S NAME TO DAPRANO.

At the hearing, Daprano expressed interest in the return of the packages of photographs only if the packages contained photographs taken by him; he stated that if packages contained photographs taken by the Rio Rancho police, he did not need or want them. See Tr. at 6:21-25 (Daprano). During the hearing, Mr. Barth stated that the packages appeared to contain only photographs documenting the execution of a search warrant, taken by the Rio Rancho Department of Public Safety. See Tr. at 18:16-19:20. Upon hearing this description, Daprano agreed that the two packages of photographs should remain in the possession of the United States. See id. 19:3-5, 19:23-25 (Court, Daprano). Mr. McCue verified the description for Daprano. See id. at 19:6-9, 19:20-22 (Court, McCue). Because Daprano has withdrawn his request that the Court order that the two packages be returned to him, the Court will not order the United States to return the two packages of photographs to him.

At the hearing, Daprano also withdrew his request that Court order that the file folder labeled clinical applications be returned to him, stating that he did not need the return of the documents in the file, see Tr. at 32:2-8 (Daprano, Court), and he withdrew his request that the Court order that the folder of miscellaneous documents in Gravina's name be returned to him, see Tr. at 22:16-17 (Daprano). Because Daprano has withdrawn his requests for return of these items, the Court will not order the United States to return the file folder labeled clinical application or the folder of miscellaneous documents to him.

**IV. THE COURT WILL DENY WITHOUT PREJUDICE DAPRANO'S REQUEST THAT IT ORDER THE RETURN OF A LAPTOP BAG AND EIGHTEEN FILES IN THE POSSESSION OF THE RIO RANCHO POLICE DEPARTMENT OR THE RIO RANCHO DEPARTMENT OF PUBLIC SAFETY.**

In his letter to the Court, and at the hearing, Daprano requested the return of a laptop bag and eighteen files in the possession of the Rio Rancho Police Department. Mr. Barth stated that these items are not in the United States' inventory and that they never came into the possession of the United States; therefore, the issue is between Daprano and the Thirteenth Judicial District District Attorney's office. See Tr. at 29:23-30:2 (Barth). It appears, based on the representations of the parties, that the Rio Rancho Department of Public Safety seized and has possession of these items.

> [T]here are some limited circumstances under which [rule 41(g)] can be used as a vehicle to petition for the return of property seized by state authorities. Those circumstances include actual federal possession of the property forfeited by the state, constructive federal possession where the property was considered evidence in the federal prosecution, or instances where property was seized by state officials acting at the direction of federal authorities in an agency capacity.

United States v. Copeman, 458 F.3d 1070, 1071 (10th Cir. 2006)(citation omitted). It appears that the laptop bag and eighteen files have continuously been in the physical custody of the Rio Rancho Police Department or the Rio Rancho Department of Public Safety. Because it does not appear that this is one of the limited circumstances under which rule 41(g) can be used to petition for the return of property seized by state authorities, the Court will deny Daprano's request that it order the return of the laptop bag and the eighteen files to him, without prejudice to him renewing the motion. Daprano may renew the motion if he contacts the Thirteenth Judicial District District Attorney's Office or the Rio Rancho Department of Public Safety, ascertains that they have these items and will not return them, and believes that the Court has jurisdiction to order the return of these items under rule 41(g).

V.     **THE COURT ORDERS THE UNITED STATES TO MAKE A REASONABLE EFFORT TO DISPOSE OF THE BOOKS IN ITS POSSESSION FOR WHICH DAPRANO DID NOT MAKE A CLAIM, AND TO SUBMIT AN ORDER BY JANUARY 15, 2011 REGARDING THE PROPOSED DISPOSITION OF THE ITEMS REMAINING IN ITS POSSESSION.**

The United States still has several items in its possession for which Daprano is not making a claim for. See Tr. at 36:9-23 (Court, Daprano). The disposition of these items must be determined. Some of the items in the United States' possession are books. At the hearing, Mr. Barth stated that he will attempt to find the people who owned the books. See Tr. at 35:1-5 (Barth). He stated that if he cannot find the owners, he will attempt to find people who want the books. See Tr. at 35:5-8 (Barth). Mr. Barth stated that if he cannot find people who want the books, he will propose an order to the Court asking for permission to destroy the books and all other items remaining in the United States' possession. See Tr. at 35:8-13 (Barth). The Court orders Mr. Barth to make a reasonable effort to find the people who owned the books, and, if he cannot find the owners, to find people who might want the books. He should contact at least two people to see if they want the books before proposing to destroy them. In any case, the United States has until January 15, 2011 to submit an order to the Court regarding disposition of the items remaining in the United States' possession.

**IT IS ORDERED** that the requests in the Letter from Louis A. Daprano to the Court (dated October 28, 2010), filed October 28, 2010 (Doc. 232), are granted in part and denied in part in accordance with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Kenneth J. Gonzales
  United States Attorney
Charles Barth
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for Plaintiff*


Louis Anthony Daprano
Hobbs, New Mexico

    *Defendant pro se*

Stephen P. McCue
  Federal Public Defender
Albuquerque, New Mexico

    *Advisory counsel for Defendant*