# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                              No. CR 04-2040 JB

LOUIS ANTHONY DAPRANO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Letter from Louis A. Daprano to the

Court (dated July 21, 2011), filed July 21, 2011 (Doc. 248)("July 21, 2011 Letter"); and (ii) the

Letter from Louis A. Daprano to the Court (dated October 13, 2011), filed October 13, 2011 (Doc.

251)("October 13, 2011 Letter"). The Court held a hearing on September 15, 2011, on the July 21,

2011 Letter.[1] The primary issue is whether the Court should order Plaintiff United States of

America to turn over: (i) eighteen patient files; and (ii) a laptop bag. The Court will grant in part and

deny in part Daprano's requests. The Court will grant Daprano's request that the United States turn

over the eighteen patient files to the extent that the parties have agreed that, if Daprano provides

Federal Public Defender Stephen P. McCue with a list of names of the eighteen people to which

these patient files relate, the United States will verify with the Federal Bureau of Investigation

("FBI") whether it has these patient files and turn them over if it locates them. The Court will

otherwise deny Daprano's request regarding the eighteen patient files. The Court will deny

Daprano's request regarding the laptop bag as the United States is not the appropriate party from

---

[1]Defendant Louis Anthony Daprano entered his appearance by telephone, but Assistant United States Attorney Charles Barth and Federal Public Defender Stephen P. McCue were present in the courtroom.

which to request the return of this property, as there is no indication that the United States ever had actual or constructive possession of the laptop bag.  Once the United States files the required affidavits, the Court will, because of sovereign immunity, dismiss Daprano's claims regarding the eighteen patient files and the laptop bag without prejudice for lack of subject-matter jurisdiction.

**PROCEDURAL BACKGROUND**

On August 16, 2007, Daprano entered into a plea agreement, in which he pled guilty to a violation of 18 U.S.C. § 1344 -- Bank Fraud.  See Plea Agreement, filed August 16, 2007 (Doc. 164).  On April 17, 2008, Daprano moved for "the return of all property seized" from him pursuant to rule 41(g) of the Federal Rules of Criminal Procedure.  Defendant's Motion for Return of Property at 1, filed April 17, 2008 (Doc. 187).  On July 3, 2008, the Court entered a Memorandum Opinion and Order, granting in part and denying in part Daprano's motion.  The Court allowed the FBI to transfer the items seized as evidence to the State of New Mexico, because the items were possibly admissible evidence in the pending state-court case, and ordered that all items not used in the state trial as evidence be returned to the FBI immediately after the state trial for return to Daprano.  See Memorandum Opinion and Order at 1-2, filed July 3, 2008 (Doc. 207)("July 3, 2008 MOO").  The Court denied Daprano's motion as to any items used in the trial.  See July 3, 2008 MOO at 2.

On June 25, 2009, Daprano wrote to the Court, requesting that the Court "immediately direct the state [of New Mexico] to return . . . [his] property," as the State of New Mexico had not yet returned any of his property, and requesting that the Court order the State of New York to return Daprano's property that the North Greenbush Police Department seized in North Greenbush, New York, on August 23, 2004.  Letter from Louis A. Daprano to the Court at 2-3 (dated June 25, 2009), filed June 25, 2009 (Doc. 209).  The Court issued a Memorandum Opinion and Order on November

5, 2009, granting in part and denying in part Daprano's requests in his letter.  The Court denied

Daprano's request that it order the State of New York to return his property seized in New York,

because it did not have jurisdiction to order the State of New York to return the property.  See

Memorandum Opinion and Order at 1-2, filed November 5, 2009 (Doc. 221)("Nov. 5, 2009 MOO").

The Court required compliance with its previous order that the United States retrieve Daprano's

property from the State of New Mexico at the conclusion of the state-court trial, that the United

States return the property to the FBI, and that the FBI transfer the property to Daprano.  See Nov.

5, 2009 MOO at 2.  The Court recognized that the property had not yet been returned to Daprano,

and that neither the State of New Mexico nor Daprano used any of the items in the State's

possession in the state-court trial.  See Nov. 5, 2009 MOO at 2.  The Court ordered the State of New

Mexico to return Daprano's property to the FBI no later than ten days from November 2, 2009, and

ordered the FBI to transfer Daprano's property to his designated agent within ten days from the time

that the State of New Mexico transferred Daprano's property to the FBI.  See  Nov. 5, 2009 MOO

at 2.

On November 20, 2009, Assistant United States Attorney Charles L. Barth filed a letter and

inventory with the Court, representing that six boxes were sent to Daprano's agent in New York.

See Letter from Charles L. Barth to the Court at 1 (dated November 20, 2009), filed November 20,

2009 (Doc. 222)("November 20, 2009 Letter").  The inventory listed items in either red or black ink;

the items in black ink were sent to Daprano's agent, and the United States Attorney's Office retained

the items in red ink pending determination of ownership.  See November 20, 2009 Letter at 1.

Daprano's October 28, 2010 Letter to the Court requested the return of several items retained

in the United States Attorney's Office and requested that the Court order the Rio Rancho Police

Department ("RRPD") to turn over any illegally confiscated property.  See Letter from Louis A.

Daprano to the Court at 2-3 (dated October 28, 2010), filed October 28, 2010 (Doc. 232)("October

28, 2010 Letter").  Specifically, Daprano sought return of: (i) a Hewlett Packard laptop; (ii) a Epson

printer; (iii) a book entitled Rapid Access Guide to Physical Examination by Donald W. Novey; (iv)

a Model Agreement from Image Photography, dated June 8, 2004; (v) two packages of photographs

from Walgreens one-hour photo labeled DPS evidence; (vi) a file folder labeled clinical

applications; (vii) a blue folder containing miscellaneous documents in Louis D. Gravina's name;[2]

and (viii) a Landscapes weekly planner in Gravina's name.  Daprano also sought the return of a

laptop bag and eighteen files in the possession of the RRPD.  The Court granted in part and denied

in part Daprano's requests for return of this seized property.  See Memorandum Opinion and Order

at 1, filed December 7, 2010 (Doc. 243)("December 7, 2010 MOO").  The Court granted Daprano's

requests for return of the Hewlett Packard laptop, the Epson printer, the Rapid Access Guide to

Physical Examination by Donald W. Novey, the Model Agreement from Image Photography, and

the Landscapes weekly planner in Gravina's name.  See December 7, 2010 MOO at 1.  Because

Daprano has withdrawn his requests for the return of the two packages of photographs, the folder

labeled clinical applications, and the folder containing miscellaneous documents in Gravina's name,

the Court did not order the return of these items to him.  See December 7, 2010 MOO at 1-2.  The

Court denied without prejudice Daprano's request that it order the return of a laptop bag and

eighteen files in the possession of the RRPD.  See December 7, 2010 MOO at 2.  The Court gave

the United States until January 15, 2011 to submit an order regarding the proposed disposition of

the items remaining in its possession.  See December 7, 2010 MOO at 2.

On July 21, 2011, Daprano wrote the Court requesting the return of eighteen patient files and

_____

[2]The name Louis D. Gravina is an alias the Daprano used in the past.  See Memorandum
Opinion and Order at 1, filed December 7, 2010 (Doc. 243).

a laptop bag from the United States.  See July 21, 2011 Letter at 1-2.  Daprano notes that the

applicable records indicate that the RRPD gave these files to the FBI.  See July 21, 2011 Letter at

1.  Daprano points out that eight months have passed since the November 30, 2010 hearing and that

he has still not received these files.  See July 21, 2011 Letter at 1-2.  Daprano contends that these

files contain exculpatory evidence that would aid him in his state trial and that depriving him of this

material would violate Brady v. Maryland, 373 U.S. 83 (1963).  See July 21, 2011 Letter at 2.

Daprano argues that, because his state case is still under review, these files may prove helpful to the

outcome of his case.  See July 21, 2011 Letter at 2.  With respect to the laptop bag, Daprano states

that a RRPD sergeant has said that this bag has been destroyed, because it was not delivered to the

FBI and is no longer in the RRPD evidence vault.  See July 21, 2011 Letter at 2.  Daprano says he

does not believe that it has been destroyed.  See July 21, 2011 Letter at 2.  Daprano has sought

reimbursement for the bag, but he alleges that Mr. McCue, his former attorney, told him that his role

was limited to assisting him with the recovery and disposition of his property, and did not include

filing claims against the RRPD.  See July 21, 2011 Letter at 2.

The Court held a hearing on September 15, 2011.  Daprano appeared by telephone, but Mr.

Barth and Mr. McCue appeared in person.  At the hearing, the United States noted that, when it

brought Daprano into federal custody several years ago, the United States provided an inventory to

the Court, counsel, and Daprano regarding all of the items that the RRPD provided to the FBI.  See

Transcript of Hearing at 5:4-8 (taken September 15, 2011)(Barth)("Tr.").[3]   The United States

reiterated that it did not have any of Daprano's property other than the items which appear on the

inventory and that the RRPD has any remaining property.  See Tr. at 5:18-21 (Barth).  The United

---

[3]The Court's citations to the transcript of the hearing refers to the court reporter's original,
unedited version. Any final transcript may contain slightly different page and/or line numbers.

States asserted that it had verified with the FBI that none of these patient files were in the United States' possession.  See Tr. at 5:25-6:5 (Barth).  The United States noted that it cannot speak for what items are in the RRPD's possession.  See Tr. at 6:17-20 (Barth).  Mr. McCue stated that he had contacted the RRPD and that they had related to him that the laptop bag has been destroyed.  See Tr. at 7:21-24 (McCue).  Mr. McCue also related that the RRPD told him that it had turned over the eighteen patient files to the FBI.  See Tr. at 7:21-8:3 (McCue).  Daprano pointed to some RRPD records, specifically records detailing maintenance of police evidence and property, which indicated that they had turned over the patient files to the FBI.  See Tr. at 9:9-13 (Daprano).  Daprano also indicated that an investigator for the Federal Public Defender's Office indicated that the RRPD had turned over to the FBI everything in its possession, including these eighteen files.  See Tr. at 10:1-7 (Daprano).  The United States pointed out that Daprano's trial counsel in his state proceedings came to the FBI evidence room and had access to all the evidence that the FBI was holding related to Daprano.  See Tr. at 13:18-24 (Barth).  The United States noted that Daprano's trial counsel in his state proceedings never indicated that any patient files were missing from the records.  See Tr. at 14:2-4 (Barth).  Daprano countered that his trial counsel did not know for what he was looking, as he had not consulted with Daprano.  See Tr. at 14:5-24 (Daprano).  The United States agreed at the hearing that, if Daprano provided Mr. McCue with a list of names of the eighteen people to which these patient files relate, the United States would verify with the FBI that it did not have these patient files.  See Tr. at 17:8-15 (Barth).  If the subsequent search of the FBI records does not reveal anything, the United States asserted that Daprano's next course of action should be to raise this issue in state district court in Rio Rancho.  See Tr. at 17:15-18 (Barth).  The Court indicated to Daprano that it was not inclined to require the United States to do any more searching if Daprano was not willing to provide the United States with this list of names.  See Tr. at 19:4-11 (Court).  The Court

-6-

noted that, if this process did not reveal that these eighteen records were in the United States'

possession, Daprano would likely need to take advantage of the respective proceedings at the state

and county level.  See Tr. at 21:17-21 (Court).  The Court noted that, with respect to the issue of

providing compensation to Daprano for the RRPD destroying his property, Daprano would need to

raise that issue in a separate proceeding.  See Tr. at 24:10-23 (Daprano, Court).

Following the hearing, Daprano wrote a letter to the Court date October 13, 2011.  In this

letter, he mentioned that he also needed these eighteen patient files because one of the alleged

victims in his state case has filed a civil suit against him.  See October 13, 2011 Letter at 1, 3.  He

pointed out that, because he is indigent, he must defend himself in this suit.  See October 13, 2011

Letter at 3.

## RELEVANT LAW REGARDING RULE 41(g)

Rule 41(g) of the Federal Rules of Criminal Procedure states:

> A person aggrieved by an unlawful search and seizure of property or by the
> deprivation of property may move for the property's return.  The motion must be
> filed in the district where the property was seized.  The court must receive evidence
> on any factual issue necessary to decide the motion.  If it grants the motion, the court
> must return the property to the movant, but may impose reasonable conditions to
> protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).  "A district court should exercise its equitable power to grant relief only if

the Rule 41(g) movant shows 'irreparable harm and an inadequate remedy at law.'"  United States

v. Soto-Diarte, 370 F.App'x 886, 887 (10th Cir. 2010)(unpublished)(quoting United States v.

Copeman, 458 F.3d 1070, 1071 (10th Cir. 2006)).  "Once criminal proceedings have terminated,

however, 'the person from whom the property was seized is presumed to have a right to its return

and the government must demonstrate that it has a legitimate reason to retain the property.'"  United

States v. Soto-Diarte, 370 F.App'x at 887 (quoting United States v. Rodriguez-Aguirre, 264 F.3d

1195, 1213 n.14 (10th Cir. 2001)).  There must be some evidence in the record to support the movant's contention that the property at issue is in "the actual or constructive possession of the United States."  United States v. Solis, 108 F.3d 722, 722-23 (7th Cir. 1997)(affirming denial of motion when there was "no evidence that the automobile was in the actual or constructive possession of the United States at the time of the filing of" the motion or before the filing of the motion).  In a case where the parties did not contest the issue that the government at one point in time had the property at issue, the United States Court of Appeals for the Second Circuit noted that the United States needed to submit some form of evidence to support its contentions that it had already returned the property or that it had destroyed the property.  See Rufus v. United States, 20 F.3d 63, 65 (2d Cir. 1994).

When there is an issue whether the government possesses certain property, the district court must make factual findings to resolve that issue.  See United States v. Soto-Diarte, 370 F.App'x at 887.  As the United States Court of Appeals for the Seventh Circuit has noted, "whether the Government still possesses the property at issue is a question of fact" on which the Court must receive evidence if necessary to decide the motion.  See United States v. Stevens, 500 F.3d 625, 628 (7th Cir. 2007).  The district court is not required to conduct an evidentiary hearing to resolve all factual disputes, but the district court must receive evidence to resolve factual disputes such as sworn affidavits or documents verifying the chain of custody of particular items.  See United States v. Soto-Diarte, 370 F.App'x at 887; United States v. Stevens, 500 F.3d at 628.  Notably, sovereign immunity bars monetary relief against the United States under rule 41 when the United States no longer possesses the property at issue.  See Clymore v. United States, 415 F.3d 1113, 1120 (10th Cir. 2005).  If the district court makes a finding that the United States no longer possesses the property at issue, it should dismiss the rule 41(e) claims for lack of subject-matter jurisdiction based on

sovereign immunity.  See Clymore v. United States, 415 F.3d at 1120.  The district court can, alternatively "grant the movant an opportunity to assert an alternative claim for monetary relief, an approach that is particularly appropriate in the case of pro se movants."  United States v. Soto-Diarte, 370 F.App'x at 888.

The United States Court of Appeals for the Eleventh Circuit noted that, in the context of the government not returning property that has allegedly been destroyed: "The government must do more than state, without documentary support, that it no longer possesses the property at issue." United States v. Potes Ramirez, 260 F.3d 1310, 1314 (11th Cir. 2001).  Likewise, the Eleventh Circuit noted that, "when the government does not verify its claim that the seized property was destroyed, and there is no evidence in the record to show that the property was actually destroyed, the government fails to meet its burden under  Rule 41(g)."  United States v. Potes Ramirez, 260 F.3d at 1314.  In the Eleventh Circuit case, the issue was not contested whether the United States had possession of the property before it had destroyed that property.  See United States v. Potes Ramirez, 260 F.3d at 1312, 1314.

The United States Court of Appeals for the Tenth Circuit reviews questions of law relating to a rule 41(g) motion de novo.  See United States v. Soto-Diarte, 402 F.App'x 388, 390 (10th Cir. 2010)(unpublished).   The Tenth Circuit reviews a "district court's weighing of equitable considerations and its decision to deny a Rule 41(g) motion for an abuse of discretion."  United States v. Soto-Diarte, 402 F.App'x at 390.  A district court abuses its discretion in this context where it "fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."  Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997).

The Tenth Circuit has noted:

[T]here are some limited circumstances under which [rule 41(g)] can be used as a

> vehicle to petition for the return of property seized by state authorities.  Those circumstances include actual federal possession of the property forfeited by the state, constructive federal possession where the property was considered evidence in the federal prosecution, or instances where property was seized by state officials acting at the direction of federal authorities in an agency capacity.

United States v. Copeman, 458 F.3d at 1071 (citation omitted).  "[P]roperty seized and held by state law-enforcement officers is not in the constructive possession of the United States for Rule 41(g) purposes unless it is being held for potential use as evidence in a federal prosecution."  United States v. Copeman, 458 F.3d at 1072.  In United States v. Copeman, the Tenth Circuit held that, "[w]hen state avenues of relief are open to the movant, he cannot show an inadequate remedy at law."  458 F.3d at 1073 (internal quotation marks omitted)(brackets omitted).  In United States v. Copeman, the defendant sought return of property that state law enforcement officers seized and held.   458 F.3d at 1071.  The property was also "the subject of state judicial-forfeiture proceedings when [the defendant] filed his Rule 41(g) motion."  See United States v. Copeman, 458 F.3d at 1071.  The defendant contended that the state judicial-forfeiture proceedings were an inadequate remedy.  See United States v. Copeman, 458 F.3d at 1073.  The Tenth Circuit stated, "to the extent that [the defendant] contends that state judicial-forfeiture proceedings do not provide an adequate remedy because he has a greater burden of persuasion in those proceedings . . . . A remedy may still be adequate, even if imperfect."  United States v. Copeman, 458 F.3d at 1073.  See United States v. Van Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir. 1991)(holding that a defendant's motion for return of property "may be denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.").

## ANALYSIS

Daprano has asked the Court to order the United States to turn over: (i) eighteen patient files;

-10-

and (ii) a laptop bag.  After considering the parties' arguments, the previous inventories filed in this case, and the proceedings at the September 15, 2011 hearing, the Court concludes that based on the limited record before the Court that the eighteen patient files are not in the United States' possession.  If, pursuant to the agreement at the hearing where Daprano said he would turn over a list of the eighteen patient names to Mr. McCue to provide to the United States, the United States discovers it has these records in its possession, the United States must turn over those records to Daprano.  After the United States has conducted its search, it must file an affidavit stating what it has done to locate the files and that the files are not in its possession.  After the United States files the required affidavit, it is not under any further obligation as to the files unless Daprano presents some new evidence that they are in the United States' possession.  Furthermore, the Court finds that the laptop bag is not in the United States' possession.  The United States must file an affidavit stating that the laptop bag is not in its possession and, to its knowledge, has never been in its possession.  After the United States files the required affidavit, Daprano must seek the bag or compensation for it from the RRPD or from someone other than the United States.  Consequently, he must pursue reimbursement for its destruction or return of the laptop bag in a separate proceeding against the RRPD or other appropriate officials or entities.  Once the United States files the required affidavits, the Court will, because of sovereign immunity, dismiss Daprano's claims regarding the eighteen patient files and the laptop bag without prejudice for lack of subject-matter jurisdiction.

I.     **BASED ON THE LIMITED RECORD BEFORE THE COURT, THE COURT FINDS THAT THE EIGHTEEN PATIENT FILES ARE NOT IN THE UNITED STATES' POSSESSION.**

"A district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows 'irreparable harm and an inadequate remedy at law.'"  United States v. Soto-Diarte, 370 F.App'x at 887.  "Once criminal proceedings have terminated, however, 'the person from whom

-11-

the property was seized is presumed to have a right to its return and the government must demonstrate that it has a legitimate reason to retain the property.'" United States v. Soto-Diarte, 370 F.App'x at 887.  There must be some evidence in the record to support the movant's contention that the property at issue is in "the actual or constructive possession of the United States." United States v. Solis, 108 F.3d at 722-23.  When there is an issue whether the government possesses certain property, the district court must make factual findings resolving that issue.  See United States v. Soto-Diarte, 370 F.App'x at 887.

There is not sufficient evidence in the record to support Daprano's contention that the United States ever had actual or constructive possession of the eighteen patient files at issue.  The parties agree that the RRPD originally had these patient files.  Given the United States' history of complying with Daprano's requests to provide him with his property, the Court is not inclined to order the United States to engage in any additional searches other than what it has agreed to do at the hearing.  While Daprano has presented evidence that the patient records may have been in the United States' possession, the United States has demonstrated that these records were never in the inventories it previously filed with the Court and that subsequent searches of its records have not revealed these eighteen patient files.  See November 20, 2009 Letter at 2-15 (providing a listing of all the property received from RRPD in the United States' possession).  Given the United States' willingness to comply with Daprano's past requests and its previous production of property to Daprano, the Court concludes that the United States is credible in its assertions that it cannot locate these eighteen patient files.  Thus, Daprano has not demonstrated that the eighteen patient files are in the United States' possession.  If, pursuant to the agreement at the hearing, the United States discovers it has these files in its possession, the United States must turn over those records to Daprano.  The Court will not order the United States to engage in any additional searches for these

-12-

eighteen patient files if it cannot locate those records based on the list of names Daprano will provide to the United States.

The Court will require the United States to file an affidavit stating what search it has conducted and that the eighteen files are not in its or the FBI's possession.  After the United States files the required affidavit, it is under no further obligation with respect to the files unless Daprano presents additional evidence that the files are in the United States' possession.  Daprano will then need to seek the files from someone other than the United States and in some other vehicle or case than this case.  Once the United States files the required affidavit, the Court will, because of sovereign immunity, dismiss Daprano's claims regarding the eighteen patient files without prejudice for lack of subject-matter jurisdiction.  See Clymore v. United States, 415 F.3d at 1120.

## II.   DAPRANO MUST RAISE HIS CLAIMS REGARDING REIMBURSEMENT FOR DESTRUCTION OR RETURN OF HIS LAPTOP BAG IN A SEPARATE PROCEEDING.

While Daprano argued in his letter that he is "suspect" of the RRPD official's explanation that the laptop bag has been destroyed, Daprano has offered no evidence to the contrary.  July 21, 2011 Letter at 2.  There is not sufficient evidence in the record to support Daprano's contention that the property at issue is in "the actual or constructive possession of the United States."  United States v. Solis, 108 F.3d at 722-23.  Furthermore, the appropriate party from which to request the return of property or compensation for its destruction is the entity in possession of that property when it was destroyed.  See United States v. Solis, 108 F.3d at 723 (citing United States v. White, 718 F.2d 260, 261 (8th Cir. 1983)).  The Tenth Circuit has noted:

> [T]here are some limited circumstances under which [rule 41(g)] can be used as a vehicle to petition for the return of property seized by state authorities.  Those circumstances include actual federal possession of the property forfeited by the state, constructive federal possession where the property was considered evidence in the federal prosecution, or instances where property was seized by state officials acting

at the direction of federal authorities in an agency capacity.

United States v. Copeman, 458 F.3d at 1071 (citation omitted).  "[P]roperty seized and held by state

law-enforcement officers is not in the constructive possession of the United States for Rule 41(g)

purposes unless it is being held for potential use as evidence in a federal prosecution." United States

v. Copeman, 458 F.3d at 1072.  In United States v. Copeman, the Tenth Circuit held that, "[w]hen

state avenues of relief are open to the movant, he cannot show an inadequate remedy at law."  458

F.3d at 1073 (internal quotation marks omitted)(brackets omitted).  In United States v. Copeman,

the defendant sought return of property seized and held by state law enforcement officers.  See 458

F.3d at 1071.  The property was also "the subject of state judicial-forfeiture proceedings when [the

defendant] filed his Rule 41(g) motion."  See United States v. Copeman, 458 F.3d at 1071.  The

defendant contended that the state judicial forfeiture proceedings were an inadequate remedy.  See

United States v. Copeman, 458 F.3d at 1073.  The Tenth Circuit stated "to the extent that [the

defendant] contends that state judicial-forfeiture proceedings do not provide an adequate remedy

because he has a greater burden of persuasion in those proceedings . . . . A remedy may still be

adequate, even if imperfect."  United States v. Copeman, 458 F.3d at 1073.

While Daprano is "suspect" whether the laptop bag was destroyed, July 21, 2011 Letter at

2, Daprano has put forward no evidence to the contrary to contest that the RRPD has not always

been in possession of the laptop bag.  Particularly given the statement from the RRPD official

stating that they have destroyed the laptop bag, there is no indication that the United States actually

or constructively possessed this laptop bag at any time, or that the United States directed state

officials to seize this property.  See United States v. Copeman, 458 F.3d at 1071.  Some evidence

in the record must support the movant's contention that the property at issue is in "the actual or

constructive possession of the United States." United States v. Solis, 108 F.3d at 722-23.  Given the

-14-

inventory that the United States has already filed in this case, the Court concludes that the laptop bag is not in the United States' possession. See November 20, 2009 Letter at 2-15. Thus, the United States is not the appropriate party from which Daprano must seek compensation for the destruction of his property. Lastly, the RRPD is not a party to this proceeding, and the Court has no power to award damages for their conduct.

The Court will require the United States to file an affidavit stating that the laptop bag is not in the United States or in the FBI's possession, and never has been in the United States or the FBI's possession. After the United States files the required affidavit, Daprano will need to seek the return of the bag or compensation for the bag from someone else and in another vehicle besides this case. Once the United States files the required affidavit, the Court will, because of sovereign immunity, dismiss Daprano's claims regarding the laptop bag without prejudice for lack of subject-matter jurisdiction. See Clymore v. United States, 415 F.3d at 1120.

**IT IS ORDERED** that the requests in the Letter from Louis A. Daprano to the Court (dated July 21, 2011), filed July 21, 2011 (Doc. 248) and the Letter from Louis A. Daprano to the Court (dated October 13, 2011), filed October 13, 2011 (Doc. 251), are granted in part and denied in part. The Court will require the Plaintiff United States of America to turn over the eighteen patient files to the extent that the parties have agreed that, if Daprano provides Stephen P. McCue with a list of names of the eighteen people to which these patient files relate, the United States will verify with the Federal Bureau of Investigation whether it has these patient files and turn them over if it locates the files. The Court otherwise denies Daprano's request regarding the eighteen patient files. The Court will not order the United States to provide any compensation for or return the laptop bag, as the United States is not the appropriate party from which to request the return of this property. There is no indication that the United States ever had actual or constructive possession of the laptop

bag.  The United States must file an affidavit stating that the laptop bag is not in its or the FBI's

possession, and never has been in their possession.  Once the United States files the required

affidavits, the Court will, because of sovereign immunity, dismiss Daprano's claims regarding the

eighteen patient files and the laptop bag without prejudice for lack of subject-matter jurisdiction.


_____
UNITED STATES DISTRICT JUDGE


*Parties and counsel:*

Kenneth J. Gonzales
   United States Attorney
Charles Barth
   Assistant United States Attorney
Albuquerque, New Mexico

          *Attorneys for the Plaintiff*

Louis Anthony Daprano
Hobbs, New Mexico

          *Defendant pro se*

Stephen P. McCue
   Federal Public Defender
Albuquerque, New Mexico

          *Assisting the Defendant*